IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Robbie Wayne Peterson, ) | C/A No. 0:12-1366-GRA-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Margaret Stephens; Sheriff Steve Mueller, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff Robbie Wayne Peterson ("Peterson"), a self-represented state prisoner, filed this action pursuant to 42 U.S.C. § 1983 alleging a violation of his constitutional rights. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion for summary judgment. (ECF No. 27.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Peterson was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (ECF No. 28.) Peterson filed a response in opposition (ECF No. 36) and the defendants replied (ECF No. 37). Having carefully considered the parties' submissions and the applicable law, the court concludes that the defendants' motion should be granted.

## BACKGROUND

Peterson alleges that, while housed at the Cherokee County Detention Center, he received delayed and inadequate treatment for a bump on his left forearm. Specifically, he alleges that he first noticed the bump on May 1, 2012 and, after filing multiple medical requests, was finally seen by a

nurse[1] on May 7, 2012 at which time he received a seven-day treatment of Bactrim, an antibiotic. Peterson states that three days later, "it was evident that the Bactrim [he] was prescribed was not effective" and that it made him nauseous. (Compl., ECF No. 1 at 3.) Peterson alleges that he became dizzy and fell, injuring his back. Peterson was taken to the hospital where, he alleges, "it was determined that the Bactrim was not strong enough for the [Staphylococcal infection ("staph infection")] which Nurse Margaret Lewis informed [Peterson] that [he] did not have." (Id.) (emphasis in original). Peterson seeks injunctive and monetary relief.

## DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

---

[1] Peterson identifies the nurse as Margaret Stephens in his Complaint. However, the defendants state that there is no person by that name employed at the Cherokee County Detention Center, and believe that this defendant is more properly identified as Nurse Margaret Lewis. (See Defs.' Mem. Supp. Summ. J., ECF No. 27-1 at 1; see also Lewis Aff., ECF No. 27-2.) In response to the defendants' motion, Peterson does not appear to contest the defendants' correction. Accordingly, the court will refer to this defendant as Nurse Margaret Lewis.



In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Exhaustion of Administrative Remedies**

As an initial matter, the defendants argue that summary judgment should be granted in their favor due to Peterson's failure to exhaust his administrative remedies because he did not file any grievance with regard to the medical care provided for his staph infection. (ECF No. 27-1 at 12.) A prisoner must exhaust his administrative remedies as required by the Prison Litigation Reform Act



("PLRA"), specifically 42 U.S.C. § 1997e(a).[2] Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover, exhaustion is required even when a prisoner seeks remedies, such as money damages, that are not available in the administrative proceedings. See Booth v. Churner, 532 U.S. 731, 740-41 (2001). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review. See generally id. Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective. Porter, 534 U.S. at 524 (quoting Booth, 532 U.S. at 739). Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). The defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005).

Here, although the defendants summarily argue that Peterson did not exhaust his administrative remedies, they have not presented any evidence to establish that the Cherokee County

---

[2] Pretrial detainees are specifically included in this requirement pursuant to § 1997e(h), which defines a "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law."



Detention Center offers a grievance system or, if one exists, what steps are required for proper exhaustion. Accordingly, the defendants have failed to carry their burden to show that Peterson failed to properly exhaust his administrative remedies in accordance with § 1997e(a). See id.

**C.     Defendant Mueller**

Defendant Sheriff Steve Mueller is entitled to summary judgment because Peterson has failed to allege any facts showing personal involvement by this defendant in connection with any alleged constitutional violation. See Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009). The law is clear that personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his individual capacity. Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). Moreover, a claim based upon the doctrine of respondeat superior does not give rise to a § 1983 claim. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S. Ct. at 1948. As the Iqbal Court observed, because masters do not answer for the torts of their servants in § 1983 cases, "the term 'supervisory liability' is a misnomer." Id. at 1949. Indeed, the dissent in Iqbal opined that "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating [] supervisory liability entirely." Id. at 1957 (Souter, J., dissenting). Moreover, even if the majority in Iqbal did not entirely dispense with the concept of liability of a supervisor in a § 1983 case, the instant Complaint fails entirely to plead facts sufficient to go forward on such a theory based on Fourth Circuit precedent. See Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (outlining the requirements to hold a supervisor liable for constitutional injuries inflicted by their subordinates).



Furthermore, the Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. art. XI.  Sovereign immunity protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State."  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989); see also Regents of the Univ. of California v. Doe, 519 U.S. 425, 429 (1997) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities.").  As an arm of the state, Sheriff Mueller is entitled to sovereign immunity and cannot constitute a "person" under § 1983 in that capacity.  See Will, 491 U.S. at 70-71; Gulledge v. Smart, 691 F. Supp. 947, 954-55 (D.S.C. 1988) (concluding that sheriffs and deputy sheriffs are agents of the state and cannot be sued in their official capacities).  Accordingly, to the extent Sheriff Mueller is sued in his official capacity, he is immune from suit.  Will, 491 U.S. at 70-71; see also Quern v. Jordan, 440 U.S. 332, 343 (1979) (recognizing that Congress did not override the Eleventh Amendment when it created the remedy found in 42 U.S.C. § 1983 for civil rights violations).  Accordingly, Sheriff Mueller is entitled to summary judgment.

**D.     Deliberate Indifference—Medical Treatment**

The standard for reviewing medical claims of pretrial detainees under the Fourteenth Amendment is essentially the same as that for a convicted prisoner under the Eighth Amendment—deliberate indifference to serious medical needs.  Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992); Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) (citing Estelle v. Gamble,

429 U.S. 97 (1976)).  Not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the [Constitution]."  Estelle, 429 U.S. at 105.  A prison official is deliberately indifferent if she has actual knowledge of a substantial risk of harm to a detainee and disregards that substantial risk.  Farmer v. Brennan, 511 U.S. 825, 847 (1994); see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004).  The government is required to provide medical care for incarcerated individuals.  Estelle, 429 U.S. at 102.  However, to establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness."  Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990).  Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983.  See Estelle, 429 U.S. at 106.  Further, while the Constitution requires a prison to provide detainees with medical care, it does not demand that a prisoner receive the treatment of his choice.  Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988).  "[A detainee's] mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation."  Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citation omitted); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

A prisoner's disagreement as to the appropriate treatment fails to rise to the level of a constitutional claim and fails to create a genuine issue of material fact.  See Nelson, 603 F.3d at 449; see also O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ("Lay people are not qualified to determine . . . medical fitness, whether physical or mental; that is what independent medical experts are for."); Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she

received adequate treatment."); Fleming v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion.").

Peterson has failed to provide any evidence from which a reasonable jury could find deliberate indifference to his medical needs. Peterson's chief allegations appear to be that his medical care was delayed by a matter of days due to having to fill out medical requests and due to the lack of availability of medical personnel, and that the treatment he did receive was ineffective. In support of their motion for summary judgment, the defendants have provided the affidavit of Margaret Lewis, the nurse who treated Peterson on multiple occasions. (Lewis Aff., ECF No.27-2.)

Nurse Lewis avers that on May 7, 2012 Peterson requested and was seen during sick call for a bump on his right elbow that Peterson indicated had been present for four days. (Lewis Aff. ¶ 4, ECF No. 27-2 at 1.) Lewis further states that, on that date, Dr. Misvkiewicv prescribed a seven-day course of Bactrim, an antibiotic commonly used to treat staph infections, to treat Peterson's condition. (Id. ¶¶ 4-5.) Lewis treated Peterson again two days later on May 9, 2012. Lewis avers that, during that visit, the infected area on Peterson's arm was cleaned, but that when the medical staff attempted to remove puss from the area, Peterson refused and stated that he wanted to go to the hospital. (Id. ¶ 6, ECF No. 27-2 at 1-2.) Peterson's request was denied, but Lewis avers that Peterson's arm was treated with an antibiotic cream and a dressing was applied. (Id.) Lewis received notice on May 12, 2012 that Peterson had fallen, and states that emergency medical services was contacted and Peterson was transported by ambulance to the emergency room at Upstate Carolina Medical Center. (Id. ¶¶ 7-8, ECF No. 27-2 at 2.) Lewis further avers that Peterson was

treated at and released from the Upstate Carolina Medical Center where he was instructed to continue the Bactrim as prescribed, and that Peterson did not request any additional care with regard to his forearm after his treatment with Bactrim was complete. (Id. ¶¶ 8-9, ECF No. 2.) In summary, the unrefuted evidence in this case shows that Peterson was seen multiple times by the medical staff at Cherokee County Detention Center, as well as received treatment outside of the detention center at an emergency room. Thus, Peterson's claim of deliberate indifference to a serious medical need fails because the record unequivocally shows that Peterson was frequently seen and treated by medical staff for his complaints.

As stated above, Peterson does not have a claim against the defendant merely because he disagrees with the course of treatment he received. See Jackson, 846 F.2d at 817; Nelson, 603 F.3d at 449; see also O'Connor, 426 F.3d at 202; Dulany, 132 F.3d at 1240; Fleming, 423 F. Supp. 2d at 1070. At most, Peterson's claims allege negligence or medical malpractice, which is not actionable under § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n.3 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that Daniels bars an action under § 1983 for negligent conduct."); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir. 1987); see also Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

To the extent that Peterson is seeking to raise state law claims of negligence or medical malpractice against Nurse Lewis, South Carolina law requires a plaintiff to file an affidavit of an expert witness with his complaint when asserting a claim of professional negligence against a professional licensed or registered with the State of South Carolina. S.C. Code Ann. § 15-36-100(B); Martasin v. Hilton Head Health Sys. L.P., 613 S.E.2d 795, 799 (S.C. Ct. App.



2005); Jernigan v. King, 440 S.E.2d 379, 381 (S.C. Ct. App. 1993). This requirement also includes nurses. See S.C. Code Ann. § 15-36-100(G). It is undisputed that Peterson has failed to file an expert affidavit with his Complaint, and therefore he cannot proceed with a state law claim of negligence or medical malpractice against the Nurse Lewis.

**E.     Other Claims**

To the extent that Peterson's Complaint may be construed to allege any other constitutional violations, the court finds that Peterson has failed to plead sufficient facts to state a plausible claim. See Iqbal, 556 U.S. 662, 667-68 (2009). To the extent that Peterson's Complaint could be construed to state any other claims arising under state law, the court should decline to exercise supplemental jurisdiction over those claims. See 28 U.S.C. § 1367(c).

**RECOMMENDATION**

Accordingly, the court recommends that the defendants' motion for summary judgment (ECF No. 27) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

March 7, 2013
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  <u>Diamond v. Colonial Life & Acc. Ins. Co.,</u> 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); <u>see</u>  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).